412 A.2d 897

**COMMONWEALTH of Pennsylvania**

v.

**John GRIFFIN, Appellant.**

Superior Court of Pennsylvania.

Submitted July 24, 1979.

Filed Oct. 19, 1979.

Petition for Allowance of Appeal Denied April 1, 1980.

Gerald A. Stein, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

O'BRIEN, Justice:

Appellant was convicted by a jury of murder of the first degree and criminal conspiracy. Post-verdict motions were denied and appellant was sentenced to life imprisonment for the murder conviction; sentence was suspended for the conspiracy conviction. This appeal followed.

This case arose from the death of James Price on December 29, 1974, at Holmesburg Prison in Philadelphia. Price was an inmate there, as were appellant and co-defendants Theodore Moody and Theodore Brown.[1]

On the date of Price's death, appellant, Moody and Brown were all inmates of D Block, a maximum security area of Holmesburg Prison. The inmates of D Block were not permitted to leave it, nor were other inmates permitted to enter it without an institutional escort. Price was seen alive at 8:00 a. m. on the date of his death. At 3:15 p. m. that day, Philip Harris, a guard, discovered Price's dead body in a vacant cell while making a routine inspection. The body was hanging by a sheet from a ventilator grating. Dr. Halbert Fillinger, Assistant Philadelphia Medical Examiner, conducted a post-mortem examination of the body and determined that death resulted from strangulation by a ligature consisting of three shoelaces braided together.

_____

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania, and Judge ROBERT W. HONEYMAN of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

1. Brown and Moody received separate trials.

The ligature was wrapped tightly around Price's neck when the body was discovered. Fillinger also noted the victim had been tortured with a sharp object prior to death. After the body was discovered, all of the inmates of D Block were locked in their cells. One of the inmates, Calvin Hunter, called Harris over to his cell and said, "They killed that guy back there, didn't they?" Hunter gave information about the killing to the authorities and testified at a preliminary hearing. At that hearing Hunter testified that while locked in his cell on the day of the incident, he saw appellant, Moody, Brown and the victim, Price, walk by in the direction of the vacant cell. He then heard someone yell several times, "Help, they're killing me." Appellant, Moody and Brown then walked past Hunter's cell without the decedent. Hunter died before appellant's trial and the court, therefore, admitted his preliminary hearing testimony into evidence. The foregoing evidence adduced at trial supports the verdict of murder of the first degree.

Appellant initially asserts the court below erred in denying his motion to suppress two photographic identifications as impermissibly suggestive. On the evening of the day Price was slain Calvin Hunter was interviewed by police homicide detectives. During that interview Hunter provided the police with a description of appellant and of appellant's accomplices; he also identified appellant by name, explaining that he knew appellant from his neighborhood prior to incarceration. Thereafter, Hunter was shown photographs of forty-four of the fifty inmates present in D Block on the day of the killing. The photographs were attached to prison cards which included the name of the person depicted. It is this last factor which appellant now asserts rendered the identification unduly suggestive.

■ While it is true that the photographic identification here complained of contained an element of suggestiveness, our analysis nevertheless, requires more. Evidence so obtained will not be excluded unless the totality of the circumstances shows that the identification procedure was "so impermissibly suggestive as to give rise to a very sub-

stantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). *Commonwealth v. Fowler*, 466 Pa. 198, 352 A.2d 17 (1976).

■ Factors to be considered in evaluating the suggestiveness of identification procedures include:

"[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation." *Fowler, id*, quoting *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

■ Instantly, an evaluation of the above criteria convinces us that the identification procedure utilized created no substantial likelihood of misidentification. The fact that the names of the persons depicted were attached to the photographs displayed will not, without more, render the array impermissibly suggestive. This is especially so where, as here, all the potential actors were incarcerated; all the photographs were prison photographs and all had names attached. Moreover, Hunter described appellant prior to being shown the photographs, and identified him by name; also, when police displayed the array they in no way indicated to Hunter that they considered appellant a suspect.

A second photographic identification, conducted three days later, is challenged as being impermissibly suggestive in that it was tainted by the initial procedure. In the second array, Hunter was shown seven photographs, including one of appellant, none of which had names attached. Hunter identified appellant, saying, "John Griffin. This is John Griffin, I know him from the street." In light of our conclusion that the first photographic array was not impermissibly suggestive, we find appellant's claim that the second was tainted thereby to be without merit.

■ Appellant next argues the court below erred in permitting the Commonwealth to rehabilitate its witness, Cal-

vin Hunter, by use of a prior consistent statement when the witness had been impeached by contradiction rather than by a charge of recent fabrication.

"As a general rule a statement made by a witness at one time, while admissible to contradict him, is not competent to corroborate or substantiate his present testimony.

. . . However, there are certain well-recognized exceptions to this general rule: prior declarations of a witness, which are consistent with his present testimony, may be admissible to corroborate his present testimony if it be alleged that the witness' present testimony is recently fabricated, or if it be claimed that the witness is testifying from corrupt motives." *Commonwealth v. Gaddy*, 468 Pa. 303, 362 A.2d 217 (1976), quoting *Commonwealth v. Wilson*, 394 Pa. 588, 148 A.2d 234 (1959) cert. den., 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959).

■ In the instant case appellant attempted to impeach Hunter's credibility by inferring Hunter testified in order to receive more lenient treatment for his own offenses. Toward this end, appellant called as witnesses two assistant district attorneys to testify concerning the circumstances surrounding Hunter's sentencing. Appellant's trial counsel, moreover, argued this theory strenuously to the jury. An assertion that a witness is testifying for such purpose has been held to be a claim of corrupt motives so as to call into operation the exception to the general rule barring the use of prior consistent statements for purposes of rehabilitation. *Commonwealth v. Bennett*, 471 Pa. 419, 370 A.2d 373 (1977); *Gaddy, supra; Wilson, supra.* Accordingly, we perceive no error in admitting the statement to rehabilitate the witness.

Appellant also argues the court below erred in denying his motion for mistrial which was grounded upon remarks made by the prosecutor.

Calvin Hunter testified on behalf of the Commonwealth at appellant's preliminary hearing, which was held in conjunction with the preliminary hearings of co-defendants Moody and Brown. In the period which intervened between the preliminary hearings and appellant's trial, Hunter died.

Consequently, Hunter's preliminary hearing testimony was read into the trial record in its entirety. Included on the record of the preliminary hearing, and read to the jury at trial, was the following exchange:

"BY MR. MALMED (Appellant's attorney): Yes, but, your Honor, we'll never have a chance to talk to this man again. We will never have a chance to corroborate any information. We have to explore anything today or we will never see him again.

"BY THE COURT: I don't know.

"MR. HAINES (Assistant District Attorney): I don't know why Mr. Malmed assumes that he will never see this man again. I hope he's well and with us for some time to come.

"MR. MALMED: I didn't mean that.

"MR. MONTGOMERY (Co-defendant's attorney): I object to Mr. Haines—

"MR. MALMED: This is ridiculous. I meant to the time of trial.

"BY THE COURT: The objection is sustained.

Appellant now asserts the reading into the trial record of the preliminary hearing testimony, with the above-quoted remark of the prosecutor included, constitutes reversible error. We, however, conclude appellant's claim has been waived.

■ Case law in this jurisdiction has consistently held that the cornerstone of our waiver doctrine is that issues below not raised *in a timely manner* are foreclosed for purposes of appellate review. *Commonwealth v. Pritchett*, 468 Pa. 10, 359 A.2d 786 (1976). In the vast majority of cases, the rubric "in a timely manner" requires contemporaneous objection; and our rules and cases rigorously enforce the contemporaneous objection rule. See, e. g., *Commonwealth v. Chuck*, 227 Pa.Super. 612, 323 A.2d 123 (1974); Pa.R. Crim.P. 1119(b); Pa.R.A.P. 302.

■ But contemporaneity of objection is not insisted upon as a value in itself, rather it is required as the most convenient method of preventing a party from permitting error to

insinuate itself into the record and complaining thereafter. In the instant case both prosecution and defense knew the witness, Hunter, was unavailable to testify at trial. The prosecution moved to have the preliminary hearing testimony read into the trial record. The defense countered, insisting that only those pages of preliminary hearing testimony which were Hunter's should be read. The defense did not, however, object to or move to have excised the remark of which he now complains. Having foregone the timely opportunity to present the issue for resolution by the court below while the remark was still unheard by the jury, he cannot now complain.

Appellant next assigns as error a ruling of the court below admitting into evidence a redacted statement of the victim. The statement admitted was one given by the victim to authorities in Washington, D. C. implicating appellant and co-defendant Moody in a crime committed there, the so-called Hanafi Muslim murders. The statement was redacted so as to excise any details of the crime and was admitted solely to establish motive for the instant crime.

Appellant is, of course, correct in his assertion that the general rule in Pennsylvania is that "evidence of a distinct crime, except under special circumstances, cannot be introduced against a defendant who is being tried for another crime . . . ." *Commonwealth v. Fortune,* 464 Pa. 367, 373, 346 A.2d 783, 786 (1975). It is, however, also true that "sometimes there exist . . . 'special circumstances' which operate as exceptions to the general rule, and bring the case within the equally well established principle that evidence of other crimes *is* admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes . . . .". *Fortune, id.,* quoting *Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955). See also, *Commonwealth v. Terry,* 462 Pa. 595, 342 A.2d 92 (1975).

In *Commonwealth v. Brown,* 482 Pa. 130, 393 A.2d 414 (1978), we held the admission into evidence of distinct crimes in the trial of appellant's co-defendant to have been "relevant to show a motive for the killing of Price." *Id.,* 482

Pa. at 135, 393 A.2d at 416. We consequently find appellant's claim of error to be without merit.

Appellant asserts that several references during trial to the Muslim religion were errors warranting new trial. Appellant founds his contention on 28 P.S. § 313, which provides:

"No witness shall be questioned, in any judicial proceeding, concerning his religious belief; nor shall any evidence be heard upon the subject, for the purpose of effecting his competency or credibility."[2]

The record of the instant case reveals that the references to the Muslim religion were elicited to demonstrate the existence of a strong common bond among appellant, his co-defendants, decedent and witnesses, i. e., their faith. No reference to the religious beliefs of any of the persons involved was for the purpose of affecting, either to bolster or impeach, credibility. As such, the instant references fall without the scope of the statute relied upon, and appellant's argument to the contrary is without merit. *McKim v. Philadelphia Transportation Co.*, 364 Pa. 237, 72 A.2d 122 (1950); *Commonwealth v. Mimms*, 471 Pa. 546, 370 A.2d 1157 (1977) (concurring opinion of Nix, J.).

Appellant next alleges he was denied his constitutionally guaranteed right to the effective assistance of counsel. Appellant advances this argument in four particulars. To each of these four particulars we must apply the oft-stated criterion by which we gauge counsel effectiveness: "Counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967).

First, appellant contends counsel was ineffective for failing to move for mistrial when references to prior and distinct criminal acts were made at trial. Counsel objected to the references, in some instances, at the time they were

**2.** Now 42 C.Pa.S.A. § 5902(b).

made, and in others in anticipation of their being made. The objections were denied, the claims of error were preserved in post-verdict motions, and have been presented to us on their merits. In these circumstances we do not believe failing to move for mistrial constituted ineffective assistance of counsel.

Second, appellant argues his trial counsel was ineffective for failure to object to allegedly prejudicial remarks made by the prosecutor in his closing argument. Our standards for effective representation do not require counsel to do an act likely to fail. *Commonwealth v. Roach*, 479 Pa. 528, 388 A.2d 1056 (1978). Herein, we have reviewed the transcribed summation of the prosecutor and do not find that it contravenes the guidelines for permissible argument. *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977). Since failure to do a non-meritorious act is not ineffective assistance of counsel, appellant's assignment of error is without merit.

Third, appellant argues his trial counsel was ineffective in not moving to excise from Calvin Hunter's preliminary hearing testimony certain references to prior criminality and certain comments by the prosecutor. We have held, *supra*, that the evidence of prior criminality was relevant to show motive for the instant crime. Hence, a motion to excise those references before the fact would have properly been denied. Additionally, the prosecutorial remarks complained of, and discussed *supra*, did not constitute reversible error. *Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973). A motion to excise a comment not erroneous would, thus, have been a fruitless act. Failure to perform a fruitless act does not constitute ineffective assistance of counsel. *Commonwealth v. Ramsey*, 259 Pa.Super. 240, 393 A.2d 806 (1978). Appellant's third assertion of trial counsel ineffectiveness is also without merit.

Fourth, appellant submits his trial counsel was ineffective in failing to object to the trial court's instructions to the jury. Our review of the court's charge to the jury reveals no error to which objection might profitably have been made. Appellant's contention is without merit.

 Finally, appellant assigns as error a ruling by the court below, at the hearing on appellant's motion to suppress, which permitted the Commonwealth, after having rested, to reopen its case to introduce the preliminary hearing testimony of Calvin Hunter.

"The general rule is that prior to rendering its decision, a court may, in its discretion, permit either side to re-open its case to present additional testimony. . . ." *Commonwealth v. Deitch Co.*, 449 Pa. 88, 295 A.2d 834 (1972); See also, *Commonwealth v. Irving*, 485 Pa. 596, 403 A.2d 549 (1979).

 In *Commonwealth v. Burton*, 164 Pa.Super. 158, 63 A.2d 508 (1949) and *Commonwealth v. Derembeis*, 120 Pa. Super. 158, 182 A. 85 (1935), both relied upon by appellant, we held that a decision to permit a party to re-open its case is within the sound discretion of the trial court. Both *Burton* and *Derembeis* were jury trials. The Commonwealth's point is well taken that the decision to permit re-opening should be even more flexible where there is no jury present, and where the issue is not guilt but, rather, the admissibility of evidence. We discern no abuse of discretion in the ruling of the court below.

Judgment of sentence affirmed.