466 A.2d 656

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Titus BURGESS.**

Superior Court of Pennsylvania.

Argued May 31, 1983.

Filed Oct. 7, 1983.

502

Garold E. Tennis, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Dennis J. Cogan, Philadelphia, submitted a brief on behalf of appellee.

Before ROWLEY, WIEAND and CIRILLO, JJ.

ROWLEY, Judge:

The Commonwealth appeals from an order granting appellee's motion to suppress the identification testimony of an eyewitness. The trial court suppressed the evidence on the ground that it was "tainted by unduly suggestive police procedures" and lacked sufficient independent sources to render it admissible. We disagree and, therefore, reverse.

■ Initially we must determine whether the Commonwealth's appeal is properly before us. Recently in *Commonwealth v. Lapia*, 311 Pa.Super. 264, 457 A.2d 877 (1983), our Court engaged in an exhaustive discussion of prior case law in this area, and concluded "that an order suppressing evidence is appealable when it is apparent from the record that the order terminates or substantially handicaps the prosecution." *Id.*, 311 Pa.Superior Ct. at 270, 457 A.2d at 880. Using this standard, we find the suppression order in this case to be appealable. Appellee is charged with murder. The Commonwealth's entire case against appellee rests on the identification testimony of James Wyatt, the only eyewitness to the crime. Consequently, any order suppressing his testimony would substantially handicap the prosecution.

The facts underlying the appeal are as follows. In the early morning hours of September 19, 1980, Elbert Reaves was shot and killed as he sat in the front seat of an automobile parked on a deserted street in the three hundred

block of East Chelten Avenue, Philadelphia. The homicide was witnessed by James Wyatt, a resident of the neighborhood. Wyatt, a steel mill worker, had just returned home after a late night shift when his attention was drawn to the street outside his third floor apartment by the sound of two voices arguing. Looking out of his bedroom window to determine the source of the altercation, Wyatt saw two men wrestling in the front seat of a car which was parked under a nearby street light. During the next hour, the argument between the individuals intensified and Wyatt returned to his bedroom window periodically to observe the escalating dispute. Suddenly, Wyatt heard two loud, sharp noises. This time when Wyatt went to the window to survey the scene, he observed that one of the men seated in the automobile had extended his hand out of the driver's side window of the car and was holding a gun. Prompted to take action by his observation, Wyatt called the police and went outside to await their arrival. Meanwhile, the confrontation between the individuals in the car continued. At one point while looking up the street for signs of the police, Wyatt momentarily turned his back to the car and its occupants. When he re-focused his attention on the car, he saw one of the men standing outside the front passenger's side door with his hand pointed into the interior of the automobile. Immediately thereafter, shots rang out. Fearful for his own safety, Wyatt quickly retreated to the entrance of his apartment building. Keeping the door to the entrance way slightly ajar, Wyatt observed the man who had fired the shots slowly turn and begin to walk in the direction of Wyatt's building. As the gunman approached, Wyatt closed the entrance door. It was from this vantage point that Wyatt observed the gunman's face, according to the suppression court's findings of fact, "at close range (five feet) for the time that it took that person to walk five steps under good nighttime lighting conditions." A short while later, the police arrived, but the gunman had already fled.

Later that morning, two detectives investigating Elbert Reaves' murder showed a photographic array to the victims co-worker, Gus Spruell, who identified appellee as a friend of the victim. At the request of the police, Spruell signed and dated the back of the photograph. On September 24, 1980, the identical photographic array was shown to Wyatt. Wyatt also picked out appellee's photograph identifying him as the victim's assailant. At the direction of the police, Wyatt likewise turned appellee's photograph over and affixed his name and date on the back. Thereafter, appellee was arrested and charged with Reaves' murder.

■■■ Appellee's preliminary hearing was held on October 8, 1980. Wyatt testified at that hearing, but was unable to identify appellee and the charges were dismissed. In February of 1981, Wyatt met one of the investigating detectives in the Reaves' murder on the street. Wyatt indicated to the detective that he was prepared to identify appellee as Reaves' murderer in court, and that he had failed to identify appellee at the October 8, 1980, preliminary hearing only because he was frightened and unfamiliar with court proceedings. Appellee was thereafter rearrested, charged with Reaves' murder, and bound over for trial. Prior to trial, appellee filed an omnibus pretrial motion wherein he sought to suppress certain statements he made to the police, along with other "improperly obtained physical and identification evidence." After a hearing, the suppression court granted appellee's motion with respect to certain oral statements made by him to the police, and with respect to the identification testimony of Wyatt.[1] The suppression court suppressed Wyatt's identification testimony on the ground that it had been tainted by the photographic array held on September 24, 1980, and by the street meeting between the detective and Wyatt in February of 1981. Furthermore, the trial court held that there was no basis

1. In perfecting this appeal, the Commonwealth has only pursued the suppression of Wyatt's identification testimony.

for the identification of appellee by Wyatt that was independent of these "tainted" procedures.

On appeal, the Commonwealth makes three arguments:

I. Appellee waived his right to challenge Wyatt's identification testimony by his failure to comply with Pa.R.Crim.P. 323(d);

II. The procedure employed with respect to the photographic array was not unduly suggestive;[2]

III. There were sufficient facts to establish an independent basis for Wyatt's identification of appellee even if taint is presumed.

The Commonwealth's first argument, not having been raised below, has been waived.[3] Consequently, our discussion here will focus only on the issues raised by II and III.

■ Our scope of review in this case is limited to determining whether the factual findings of the suppression court are supported by the record, and whether the legal

**2.** The Commonwealth does not challenge on appeal the suppression court's conclusion that the meeting between Wyatt and the detective in February of 1981 tainted Wyatt's identification of appellee. See discussion, *infra,* for resolution of this issue.

**3.** Pa.R.Crim.P. 323(d) requires that a suppression motion "state specifically and with particularity the evidence sought to be suppressed." The Commonwealth contends that appellee, by using the phrase "improperly obtained physical and identification evidence," without more, failed to comply with this requirement. As a consequence, the Commonwealth argues that appellee waived his right to challenge the identification testimony of Wyatt at the suppression hearing. This was so, the Commonwealth states, even though the suppression court subsequently considered the issue and ruled on it. While we are cognizant of the mandates of Pa.R.Crim.P. 323(d), under the circumstances of this case we believe the intent of the rule has not been violated. When appellee filed his omnibus pretrial motion, he stated with respect to the "identification" testimony that he was "without sufficient information to make averments with particularity in connection therewith," and reserved his right to challenge the same when it became known. At the outset of the suppression hearing, the suppression court gave a recitation of those items it understood to be subject to the motion to suppress, including therein the "identification procedure involving one James Wyatt." The Commonwealth offered no objection at that time to the inclusion of Wyatt's testimony in the suppression court's consideration and the issue was fully explored.

conclusions drawn therefrom are correct. *Commonwealth v. Webb*, 491 Pa. 329, 421 A.2d 161 (1980).

The suppression court's legal conclusion that the photographic array shown to Wyatt on September 24, 1980, was "unduly suggestive" is based on the assumption that Wyatt's identification of appellee was unfairly reinforced by the presence of Spruell's dated signature on the back of appellee's photograph. Although Wyatt had testified at the suppression hearing that he did not notice or see Spruell's notations when he signed his own name and date on the back of appellee's photograph, the suppression court discounted Wyatt's testimony in this regard and concluded that he had to have seen Spruell's signature and date when he turned the photograph over. Nevertheless, it was undisputed that it was only *after* Wyatt had identified appellee as the murderer that he had the opportunity to see Spruell's notations. It was also undisputed that in all other respects the photographic array was fair.

 While the presence of Spruell's signature and date on the back of appellee's photograph may have reinforced Wyatt's identification of appellee, that possibility alone did not render the photographic array "unduly suggestive." Factors to be considered when evaluating the suggestiveness of an identification procedure include: the opportunity of the witness to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; the level of certainty demonstrated by the witness at confrontation; and the length of time between the crime and the confrontation. *Commonwealth v. Griffin*, 271 Pa.Super. 228, 412 A.2d 897 (1979). An evaluation of the above criteria in conjunction with the record in this case convinces us that the *totality* of the circumstances surrounding Wyatt's identification of appellee at the photographic array assured that it was reliable and not the product of suggestion.

 Although the Commonwealth does not challenge the suppression court's second conclusion, i.e. that Wyatt's

identification of appellee was tainted by the street meeting between the detective and Wyatt in February of 1981, we find it necessary to address it here, if only to observe that there is no foundation in the record for that conclusion. Merely because Wyatt and the detective met at one point on the street and discussed the Reaves' murder does not automatically lead to the conclusion that Wyatt was coerced or unduly influenced into testifying. The suppression court in making its findings of fact found no evidence of coercion, and none can be presumed.

Having determined that no unduly suggestive police procedures occurred which tainted Wyatt's identification testimony, we need not reach the question of whether there was a sufficient independent basis for Wyatt's identification of appellee.

Order reversed. Case remanded.

Jurisdiction is relinquished.

WIEAND, J., concurred in the result.