J-A04020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JON LEE, | |
| Appellant | No. 1264 WDA 2014 |

Appeal from the Judgment of Sentence Entered March 13, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010514-2012

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MARCH 23, 2016**

Appellant, Jon Lee, appeals from the judgment of sentence of 14-30 years' incarceration, imposed following his conviction for third-degree murder, robbery, and conspiracy. In this appeal, Appellant raises three claims for our review. Unfortunately, we have determined we are unable to sufficiently address two of these claims at this time. The Pa.R.A.P. 1925(a) opinion filed in this matter was authored by the Honorable Philip Ignelzi of the Allegheny County Court of Common Pleas, who presided over Appellant's trial, but who did not rule on two of the pre-trial matters at issue in this appeal. Accordingly, we remand for the filing of a supplemental Rule 1925(a) opinion by the Honorable Jeffrey Manning, President Judge of the Allegheny County Court of Common Pleas, whose decisions are at-issue. As to Appellant's trial-related claim, we conclude that it has been waived.

Appellant was charged, tried, and convicted for his role in the shooting death of Jordan Coyner, which occurred on June 18, 2012. Appellant, who was sixteen years old when Coyner was murdered, purportedly played the role of lookout in a robbery conspiracy that resulted in Coyner's death. This lethal scheme was concocted and executed by Appellant and his cohorts: Michael Shearn, Brandon Lind, Devele Reid, and Dmetrei McCann. The specific facts underlying this crime, and Appellant's role therein, are detailed in the trial court's Rule 1925(a) opinion, but are unnecessary to our disposition in the instant memorandum. *See* Trial Court Opinion (TCO), 2/26/15, at 7-17.

On August 24, 2012, Appellant was charged as an adult with criminal homicide generally (18 Pa.C.S. § 2501), robbery (18 Pa.C.S. § 3701), and criminal conspiracy (18 Pa.C.S. § 903). ***See Commonwealth v. Sanders***, 814 A.2d 1248, 1250 (Pa. Super. 2003) ("Pursuant to 42 Pa.C.S.A. § 6322(a), when a juvenile has committed a crime, which includes murder, or any of the other offenses listed under paragraph (2)(ii) or (iii) of the definition of "delinquent act" in 42 Pa.C.S.A. § 6302, the criminal division of the Court of Common Pleas is vested with jurisdiction."). On March 7, 2013, Appellant filed a petition to transfer his case to Juvenile Court, often called a decertification petition. ***See id.*** ("When a [juvenile's] case goes directly to criminal division, the juvenile has the option of requesting treatment within the juvenile system through a transfer process of 'decertification.'").

On April, 15, 2013, Appellant filed an amended omnibus pretrial motion which included, *inter alia*, a discovery motion requesting information concerning a potential witness for the decertification hearing, Michael Shearn. At a hearing on that motion, "Judge Manning ruled that the Commonwealth did not have to provide the contact information to the defense. Instead, the court ruled that defense counsel should give the subpoena to the prosecutor to serve on Mr. Shearn." TCO, at 26.

However, at the decertification hearing:

[T]he prosecutor conceded that although defense counsel had submitted a subpoena, the Commonwealth had not served it on Mr. Shearn, nor had the Commonwealth moved to quash it. In fact, Mr. Shearn was in Arkansas at the time of the hearing. The Commonwealth requested that the defense make an offer of proof as to why Mr. Shearn's testimony would be relevant in the decertification proceedings. Defense counsel argued that Mr. Shearn's testimony would establish that his involvement and the involvement of others in the incident in question showed a much greater degree of criminal sophistication than [Appellant possessed]. Defense counsel also sought to establish that despite Mr. Shearn's involvement in the incident, he was not charged with any crimes because of a family contact with the police. It is apparent that it is the position of the defense that [Appellant] was no more culpable than Mr. Shearn, and therefore, the public interest would be served by decertifying [Appellant] to Juvenile Court. Judge Manning sustained the Commonwealth's objection to Mr. Shearn's presence upon finding that his testimony was irrelevant for purposes of the decertification proceedings.

TCO, at 26-27 (citations to the decertification hearing held on May 28th and May 30th of 2013 omitted). Ultimately, Judge Manning denied Appellant's decertification petition.

Appellant re-raised the claim regarding Mr. Shearn in a post-sentence motion seeking a new trial on March 17, 2014, before Judge Ignelzi. An evidentiary hearing was held on June 11, 2014, at which time defense counsel and the prosecutor reiterated the same arguments regarding the subpoena for Mr. Shearn that had been made at the decertification hearing. That post-sentence motion was denied on July 2, 2014.

In this appeal, Appellant contends that the decertification court abused its discretion by failing to decertify Appellant's case to juvenile court for three reasons. First, Appellant claims that the Commonwealth's sole expert impermissibly relied on Appellant's assertion of his right against self-incrimination to conclude that he was not amenable to treatment within the juvenile system. Second, Appellant asserts that he clearly established his amenability to treatment in the juvenile system by a preponderance of the evidence. Third, Appellant claims he was erroneously denied his right to compel Mr. Shearn's testimony at the decertification hearing, in violation of Appellant's state and federal due process rights. The Commonwealth concedes that:

> Review of Appellant's claim is hampered by the lack of an Opinion from Judge Manning. While the trial court, Judge Ignelzi, has offered his analysis as to why Judge Manning denied decertification, it is nothing more than mere speculation. Pa.R.A.P. 1925(a)(1) provides: [if]f the case appealed involves a ruling issued by a judge who was not the judge entering the order giving rise to the notice of appeal, the judge entering the order giving rise to the notice of appeal may request that the judge who made the earlier ruling provide an opinion to be filed...." An opinion from Judge Manning containing his reasons

> for denying decertification is critical to this Court's examination of whether a gross abuse of discretion occurred given that Judge Manning never discussed his ruling on-the-record and instead issued a written Order denying Appellant's petition without any analysis. The lack of an opinion from Judge Manning poses a substantial impediment to meaningful and effective appellate review.

Commonwealth's Brief, at 35 (internal citations omitted).

Separately, Appellant also claims in this appeal that the suppression court, also presided over by Judge Manning, erred when it denied Appellant's motion to suppress the statement he gave to police before dawn on the morning after the shooting. Specifically, Appellant claims that the police violated his constitutional rights by failing to issue *Miranda*[1] warnings, and by failing to ensure that his parents were present, when police solicited an inculpatory statement from him at a police station. The Commonwealth argued at the suppression hearing, and continues to maintain, that Appellant was not a suspect, was not under arrest, and was not subject to an interrogation when he made that statement.

However, in its Brief, the Commonwealth acknowledges that "the lower court herein made no findings of fact or conclusions of law on the record as required by Pa.R.Crim.P. 581(I). It merely entered an oral order and a written order denying the motion at the end of the [suppression] hearing." Commonwealth's Brief, at 19. And while the Commonwealth "respectfully submits that this Court may review the record of the suppression hearing,

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

like the trial court did in its Pa.R.A.P. 1925(a) Opinion," ***id.***, the Commonwealth also states that it "has no objection to the case being remanded for Judge Manning to prepare an Opinion addressing all the pretrial matters he presided over that Appellant has challenged on appeal." ***Id.*** at 19 n.8.

Despite his best efforts, we conclude that Judge Ignelzi's Rule 1925(a) opinion does not adequately address Appellant's decertification and suppression issues, given that Judge Manning presided over the decertification and suppression hearings and issued the critical orders regarding those matters. Accordingly, we remand this matter to the trial court for Judge Manning to file, within 60 days of the date of this memorandum, a supplemental Rule 1925(a) opinion addressing claims 5(a), 5(b), and 5(c), as set forth in Appellant's Rule 1925(b) statement. ***See*** Appellant's Rule 1925(b) Statement, 10/27/14, at 2-3 ¶ 5.

Appellant's final claim concerns the trial testimony of Dmetrei McCann. In what he believes to be a matter of first impression, Appellant asserts that McCann's testimony was unlawfully obtained and, as a result, should have been prohibited. Appellant's Brief, at 6, 51-55. Appellant contends that McCann's testimony was unlawfully obtained because the prosecutor ostensibly only secured that testimony by permitting McCann to be *automatically* transferred to juvenile court, where McCann then plead guilty to third-degree murder, robbery, and conspiracy. Appellant argues that this was unlawful because of standing precedent that "[t]he ultimate decision of

whether to certify a minor to stand trial as an adult is within the sole discretion of a decertification court." ***Commonwealth v. Brown***, 26 A.3d 485, 493 (Pa. Super. 2011).

Appellant maintains:

> Dmetrei McCann is 350 days older tha[n] [Appellant], and stood at the top of the victim's driveway armed with a pellet gun while [Appellant] stood unarmed. Yet, the lower court had no hearing to determine if McCann was amenable to treatment in the juvenile system. The Commonwealth never hired an expert to "evaluate" McCann to determine the threat to public safety risked by potential juvenile placement. The Commonwealth's use of the juvenile transfer process as a bargaining tool reduces the entire juvenile decertification process into a legal sham. The decertification process is now something to be traded away at the grace of the Commonwealth to garner helpful testimony, rather than a serious inquiry into the interests of society and the rehabilitative needs of the defendant.

Appellant's Brief, at 52 (internal citation omitted).

The Commonwealth argues that this claim has been waived. ***See*** Commonwealth's Brief, at 64 ("Prior to addressing Appellant's argument, the Commonwealth is compelled to note that he never challenged McCann['s] testifying at his trial in pretrial motions. Then, at trial, he lodged no objection to McCann['s] testifying and he offered no motion to strike McCann's testimony. Consequently, Appellant's argument should be deemed waived."). Our own review of the record confirms the Commonwealth's contentions, and Appellant presents no argument regarding how or when his claim was adequately and timely preserved.

Appellant ostensibly first raised the instant matter in his post-trial motion. *See* Post-Trial Motion, 12/16/13, ¶¶ 11-14. However, even if we were to accept that Appellant now presents the same claim as raised in that post-trial motion,[2] we are still compelled to find that it has been waived.

> Case law in this jurisdiction has consistently held that the cornerstone of our waiver doctrine is that issues below not raised in a timely manner are foreclosed for purposes of appellate review. ***Commonwealth v. Pritchett***, 468 Pa. 10, 359 A.2d 786 (1976). In the vast majority of cases, the rubric "in a timely manner" requires contemporaneous objection; and our rules and cases rigorously enforce the contemporaneous objection rule. ***See, e. g., Commonwealth v. Chuck***, 323 A.2d 123 (1974); … Pa.R.A.P. 302.

***Commonwealth v. Griffin***, 412 A.2d 897, 901 (Pa. Super. 1979).

Here, the relevant facts, those germane to Appellant's admittedly novel theory to exclude McCann's testimony, were known to Appellant when McCann testified. Appellant's counsel cross-examined McCann regarding the specific details of his bargain with the Commonwealth, which were also memorialized in a written agreement entered into evidence by the defense. *See* N.T. Vol. I, 12/5/13-12/13/13, at 346-48; Defense Exhibit E. Accordingly, we are constrained to conclude that Appellant's claim regarding

---

[2] There is reason to believe this is not the case. In his brief, Appellant couches his claim in terms of due process and fair trial rights. However, in his post-trial motion, Appellant instead cited the prosecution's handling of McCann as a reason to "have his [own] case transferred to the jurisdiction of the juvenile court." *Id.* at ¶ 14.

McCann's testimony has been waived because it was not raised in a timely manner below. **Griffin**, **supra**.

In sum, we conclude that Appellant's claim that McCann's testimony should have been prohibited has been waived. Regarding Appellant's remaining claims, we remand to the trial court for Judge Manning to file a supplemental Rule 1925(a) opinion in accordance with this memorandum.

Case **remanded**. Jurisdiction **retained**.