J-S65036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                 :          PENNSYLVANIA
                                 :
          v.                     :
                                 :
                                 :
ORTHELLO LEE FULTZ, JR.        :
                                 :
          Appellant          :     No. 579 MDA 2018

Appeal from the Judgment of Sentence Entered February 2, 2018
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s): CP-44-CR-0000177-2017

BEFORE: SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:           **FILED MARCH 05, 2019**

Orthello Lee Fultz, Jr. appeals from the judgment of sentence entered on February 2, 2018, after a jury found him guilty of possession with intent to deliver or manufacture a controlled substance; operating a methamphetamine laboratory and illegal dumping of methamphetamine waste; and use or possession of drug paraphernalia.[1] Fultz maintains that the trial court committed error when it denied his motion for a mistrial and his request for a curative instruction to the jury. We affirm.

The relevant facts and procedural history of this case are as follows. On February 8, 2017, Trooper Shane Varner and Trooper Daniel Cherry arrived at Fultz's residence to investigate whether methamphetamines were being manufactured at the residence. After searching the residence and questioning

---

[1] 35 P.S. §§ 780-113(a)(30); 780-113.4(b)(1); and 780-113(a)(32), respectively.

Fultz, the troopers determined that Fultz was manufacturing methamphetamines in his garage. At trial, Trooper Varner testified on direct examination that Fultz advised him that he learned "how to cook meth off of a biker in the '80s." N.T., Trial, 11/13/17, at 39. Defense counsel did not object to the testimony at that time.

On cross examination, Trooper Varner testified to the following:

Q: And Mr. Fultz didn't admit that he was making or manufacturing methamphetamine?

A: Actually, when he had asked me that, I recall that outside when we were sitting where they had the burn pit there or whatever, he at one time did say something to the effect of it all belonged to him.

Q: So you are just remembering that?

A: I was. After he had asked me that, yes. It's in my report?

Q: I didn't receive - -

A: It's part of the whole report. I'm sorry, it's not my report. It's Trooper Guido's report. I did a supplemental. It's attached to his report.

Q: So that statement is someplace in Trooper Guido's report?

A: It should be.

Q: would it assist you in your recollection if I were to show you a copy of Trooper Guido's report?

A: It would be on my supplemental attached to his report.

*Id.* at 41-42.

Following this, the trial court called counsel to side bar. Defense counsel informed the court that the Commonwealth had not supplied him with the

supplemental report and argued that the Commonwealth had violated **Brady v. Maryland**, 373 U.S. 83 (1963) and Pa.R.Crim.P. 573(B)(1). N.T., Trial at 44-45. The Commonwealth responded that it had no prior knowledge of the supplemental report and did not have it in its possession. **Id.** at 46-47. The trial court declined to grant a mistrial and decided it would instead instruct the jury to disregard Trooper Varner's testimony about Fultz's alleged admission. **Id.** at 55.

During the side bar discussion, defense counsel also raised an objection to Trooper Varner's testimony that Fultz allegedly said "he learned how to cook meth in the '80s from an old biker friend":

> And, Your Honor, the statement that Mr. Varner made we also object to. The first time we ever heard of this statement where Mr. Fultz supposedly said he related that he learned how to cook meth in the '80s from an old biker friend, that was only in this report as well. We have never heard that statement before either. So both that statement and the statement that he related that all the stuff was his are the two items of new information that we were previously unaware of. And if the [c]ourt is inclined to issue a corrective instruction to the jury, we would request that it be made on both of those statements.

**Id.** at 51-52. The trial court overruled the objection because "[i]t wasn't objected to at the time." **Id.** at 54. However, when the jury returned, the trial court gave the following curative instruction:

> Ladies and gentlemen of the jury, we had discussed some things with regard to the previous testimony. So what I will instruct you on is the last portion of Trooper Varner's testimony indicated that Mr. Fultz made a statement that, quote, all items belonged to me. That was contained in a supplemental report that the Commonwealth did not know existed, defense counsel didn't know existed until the day of trial.

So with regard to that supplemental report, I'm just advising you you can't take that statement into consideration as far as testimony or evidence here today with regard to the charges against Mr. Fultz. Do you understand that?

*Id.* at 56.

The jury found Fultz guilty of the above-referenced charges and the trial court subsequently sentenced him. This timely appeal followed.

On appeal, Fultz raises the following issues:

I.  Whether the trial court erred when it denied [Fultz's] motion for mistrial after Trooper Shane Varner testified that [Fultz] had admitted that all items related to the manufacture of methamphetamine belonged to him and that this alleged statement was contained in a supplemental police report and the alleged inculpatory statement(s) therein were never provided to the defense prior to trial in violation of ***Brady v. Maryland*** and Pa.R.Crim.P. 573(B)?

II. Whether the trial court erred when it denied [Fultz's] request for curative instruction or corrective statement concerning Trooper Varner's testimony that [Fultz] told Varner a biker friend had taught him to cook methamphetamine in the 1980's?

Fultz's Br. at 7.

We review the grant or denial of a motion for a mistrial for an abuse of discretion as "[t]he trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury." ***Commonwealth v. Simpson***, 754 A.2d 1264, 1272 (Pa. 2000). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous."

***Commonwealth v. Dengler***, 890 A.2d 372, 379 (Pa. 2005) (citation omitted).

A mistrial is appropriate "where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." ***Simpson***, 754 A.2d at 1272. Thus, "a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice." ***Id.***

Fultz claims that a mistrial was necessary because of the Commonwealth's alleged violation of ***Brady*** and Rule 573(B)(1), in failing to provide the supplemental report. Fultz candidly admits that ***Brady*** does not warrant relief for this claim since ***Brady*** concerns "the withholding of exculpatory or potentially exculpatory evidence by the prosecution." Fultz's Br. at 18. Nevertheless, he maintains "[n]o curative instruction could possibly mitigate the prejudicial effect of the statement that was improperly introduced by Trooper Varner . . . particularly where the curative instruction in this particular case likely had the effect of reinforcing the substance of Trooper Varner's testimony." Fultz's Br. at 21.

A defendant establishes a ***Brady*** violation where he or she demonstrates "that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant." ***Commonwealth v. Gibson***, 951 A.2d 1110, 1126 (Pa. 2008). Prejudice occurs in the ***Brady*** context if "the evidence suppressed [is] material to guilt or punishment." ***Id.***

Pennsylvania Rule of Criminal Procedure 573(B)(1) reads:

In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

Pa.R.Crim.P. 573(B)(1).

Here, the trial court concluded that a *Brady* violation did not exist and therefore a mistrial was not appropriate. It stated:

Nothing was presented to this Court, either on the day of trial or since the day of trial, to indicate the supplemental report contained any information favorable to [Fultz] either because it was exculpatory or because it could have been used for impeachment purposes. The only information presented to this Court regarding the supplemental report was that it contained an inculpatory statement made by [Fultz].

Moreover, this [c]ourt cannot say the Commonwealth's failure to disclose the supplemental report amounts to a *Brady* violation as no argument was offered to prove that the evidence was material to [Fultz's] guilt or innocence. Material requires more than a mere possibility that the disclosed information might have helped the defense or affected the outcome of the trial. In [Fultz's] case, had the alleged inculpatory statement not been raised in Trooper Varner's cross-examination, there would still have been sufficient evidence for a reasonable jury to return a verdict of guilty on the crimes charged.

Trial Court 1925(a) Opinion ("TCO"), filed May 1, 2018, at 2-3 (unpaginated).

The court also concluded that it addressed any issue by giving a curative instruction pursuant to Rule 573(E), which reads:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with

this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E).

The court's reasoning is supported by the record and does not misapply the law. No relief is due under **Brady** because Fultz failed to demonstrate that the report contained exculpatory or impeaching evidence. Additionally, the curative instruction given adequately addressed any prejudice that resulted from Trooper Varner's testimony. The instruction told the jury to disregard Trooper Varner's testimony. As such, we conclude that the trial court did not abuse its discretion.

Next, Fultz maintains that the trial court erred when it denied his request for a curative instruction regarding Trooper Varner's testimony that Fultz learned the process of cooking methamphetamines from a biker. The Commonwealth argues that Fultz has waived this issue because he did not object to the testimony. However, Fultz argues that "[t]here was no basis for an objection at the time of Varner's testimony on direct examination." Fultz's Br. at 24.

In addressing this issue, the trial court stated the following:

This [c]ourt first notes that an objection was not raised by [Fultz] at the time Trooper Varner initially made the statement in question. Further, it was the discretion of this [c]ourt that a curative instruction was not necessary following Trooper Varner's testimony as the statement in question indicated only that [Fultz] was once told how to produce methamphetamine. The statement was not an admission that he had even manufactured

- 7 -

methamphetamine or that he currently was manufacturing methamphetamine. Therefore, it is the opinion of this [c]ourt that the statement was not so inflammatory or prejudicial so as to render the jury incapable of returning a fair verdict.

TCO at 5 (unpaginated). We agree with the reasoning of the trial court.

"[I]t is within the sound discretion of the trial court to determine whether a curative instruction is necessary." **Commonwealth v. Sanchez**, 82 A.3d 943, 982 (Pa. 2013). "The purpose of contemporaneous objection requirements respecting trial-related issues is to allow the court to take corrective measures and, thereby, to conserve limited judicial resources." **Commonwealth v. Sanchez**, 36 A.3d 24, 42 (Pa. 2011).

While Fultz raised an objection to the testimony later in the proceeding, he lodged no objection at the time of the testimony; he therefore waived this issue for appellate review. **See Commonwealth v. Griffin**, 412 A.2d 897, 901 (Pa.Super. 1979) (stating that crux of waiver doctrine is that issues not raised below in a timely manner are "foreclosed for purposes of appellate review" and "in a timely manner requires contemporaneous objection"); **see also** Pa.R.A.P. 302(a) (issues not raised below may not be raised for the first time on appeal).

Even if Fultz had properly preserved this issue, we would conclude that it lacks merit. As the trial court pointed out, Trooper Varner's testimony "was not an admission that [Fultz] had ever manufactured methamphetamine or that he currently was manufacturing methamphetamine." TCO at 5 (unpaginated). As such, we conclude that the trial court did not abuse its

discretion by denying Fultz request for a curative instruction. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/05/2019