424 A.2d 1257

COMMONWEALTH of Pennsylvania, Appellant,

v.

Larry C. SHIVELY.

Supreme Court of Pennsylvania.

Submitted Oct. 16, 1980.

Decided Jan. 30, 1981.

Robert F. Banks, First Asst. Dist. Atty., Kenneth A. Osokow, Asst. Dist. Atty., for appellant.

Kevin H. Way, Asst. Public Defender, Lycoming, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

Larry C. Shively, appellee herein, was convicted by a jury of rape, involuntary deviate sexual intercourse, aggravated assault and felonious restraint. Post-verdict motions were denied and appellee was sentenced to a prison term of three-to-ten years. An appeal was taken to the Superior Court, which granted appellee a new trial. *Commonwealth v. Shively*, 254 Pa.Super. 173, 385 A.2d 581 (1978). We granted the Commonwealth's petition for allowance of appeal and this appeal followed.

The facts, according to the testimony of the victim, a twenty year old female, are as follows. On April 26, 1975, the victim was driving home at 11:00 P.M. in a rural portion of Lycoming County. The victim observed a car traveling in the opposite direction make a U-turn and begin following her, intermittently blinking the bright lights. Because of the blinking lights and because the victim thought she had recognized the other car's driver when they passed, she pulled off the side of the road and stopped. Appellee approached the victim's car and asked if she knew where someone lived. When she replied that she couldn't help, appellee reached into the car and with a knife in hand, grabbed the victim's wrist. Appellee then ordered the victim to turn off the motor and get out of the car. Without releasing the victim from his grasp, appellee picked up the car keys and pulled the victim toward the rear of her car. When he was unable to open the victim's trunk, he pulled the victim toward his car, which he shut off. Appellee then forced the victim into her own car. He drove a few miles before turning on a dirt road. After stopping the car, appellee ordered the victim to undress. He then ordered the victim to get out of the car and to lay down on the grass. When the victim protested that it was too cold, appellee agreed that they should get in the back seat. Appellee then removed the victim's underwear and ordered her to lean over the back of the front seat. Appellee then inserted, first, his finger and later his tongue into the victim's vagina.

Subsequently, appellee ordered the victim to turn around and sit on his lap. After penetrating her vagina, appellee forced the victim to engage in intercourse for a few minutes until he ordered her to get off him. While the victim remained in the back seat, appellee got in the front seat and drove to the location where his car was parked. Appellee then told the victim to lay down in the back seat and to remain there until he got in his car and drove off.

At trial, appellee presented an alibi defense, alleging that he had been at home, in Milton, Union County, the entire day of the crime. Appellee's mother corroborated his testimony.

The Commonwealth, on rebuttal, was allowed to introduce into evidence a copy of a court record from Montour County where appellee had pled guilty to sodomy. The Commonwealth also proffered the testimony of a state trooper who had investigated the prior criminal conduct. According to the trooper's testimony, appellee had, on September 8, 1971 accosted a twenty year old lady in a hospital parking lot as she was entering her car. Appellee forced the woman into his car and drove her to an isolated area of Montour County. Appellee forced the victim to kneel on all fours when he noticed that she was menstruating. At gunpoint, appellee forced the woman to perform sodomy. Following completion of this act, appellee drove away, leaving the woman behind.

Appellee was arrested for this incident on February 10, 1972. He subsequently pled guilty and was incarcerated on April 28, 1972. The instant criminal episode occurred six days after appellee was released from prison.

At trial, the Commonwealth argued that the evidence of appellee's prior criminal conduct was admissible to establish appellee's identity by showing the similarity between the two incidents. *Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783 (1975). Appellee, on the other hand, argued that the three-and-one-half-year gap between the two incidents made the original incident too remote to be of any use to the Commonwealth. The prosecutor countered by arguing that

appellant had no opportunity to commit similar crimes because he had been imprisoned for three years. The trial court allowed admission of the evidence. The Superior Court reversed and granted appellee a new trial, holding that the evidence was too remote and thus was inadmissible. *Commonwealth v. Shively, supra.*

The Commonwealth, in this appeal, argues that because of appellee's incarceration, the period of time in which he had the opportunity to commit these criminal acts of a sexual nature was only seven months; that period, as the Commonwealth argues, is not so remote as to render the evidence inadmissible. In our view, we need not address the issue of whether appellee's period of incarceration should be excluded in answering the remoteness question, for even the period of seven months renders the instant evidence too remote to allow its admission.

It is well settled that:

" . . . Evidence of other crimes is admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others *or to establish the identity of the person charged with the commission of the crime on trial,*—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Commonwealth v. Wable,* 382 Pa. 80, 82, 114 A.2d 334, 336–37 (1955) (Emphasis added.)

As McCormick has stated, evidence of prior crimes is admissible:

" . . . to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here, *much more is demanded than the mere repeated commission of crimes of the same class,* such as repeated burglaries or thefts. *The device used must be so unusual and distinctive as to be like a signature.*" McCormick, Evidence, § 190 (1972 2d ed.) (Emphasis added) (Footnotes omitted).

In the instant case, we are simply unable to find enough similarities between the two criminal episodes to brand the device as "so unusual and distinctive as to be like a signature."

As the Commonwealth points out in its brief, the evidence of appellee's guilty plea and the facts surrounding said plea were used for one purpose, i.e. to establish identity of the perpetrator. As Wigmore has theorized, use of prior criminal conduct to establish identity requires significant similarities between the two acts to show that it is more likely than not that the same individual committed both acts. Wigmore, *Evidence*, § 304 (1940 3d ed.) Even if the time period between the two crimes at issue instantly was only seven months, we cannot find sufficient similarity to allow admission of evidence concerning appellee's guilty plea in 1972.

■ We have held that even if evidence of prior criminal activity is admissible under *Commonwealth v. Fortune, supra,* said evidence will be rendered inadmissible if it is too remote. *Commonwealth v. Brown,* 482 Pa. 130, 393 A.2d 414 (1978). Remoteness, in our view, is but another factor to be considered in determining if the prior crime tends to show that the same person committed both crimes. The degree of similarity between the two incidents necessary to prove common identity of the perpetrator is thus inversely proportional to the time span between the two crimes. Even if the time span instantly is only seven months, we fail to perceive enough similarity between the two episodes to allow admission of the prior activity.

■ The Commonwealth argues that *Commonwealth v. Kline,* 361 Pa. 434, 65 A.2d 348 (1949) controls the instant case. There, we held that where sex crimes are at issue, the law is more liberal in allowing admission of prior crimes than where non-sex offenses are involved. In *Commonwealth v. Boulden,* 179 Pa.Super. 328, 116 A.2d 867 (1955), Judge Woodside offered what we believe to be an extremely able criticism of the *Kline* rule. For the reasons set forth

therein, we explicitly overrule *Kline* on this point and hold that sexual and non-sexual crimes must be treated alike in deciding whether evidence of prior criminal activity should be admitted. McCormick, Evidence, *supra*, § 190 n. 40.

Order of the Superior Court is affirmed.

ROBERTS, J., concurs in the result.

NIX, J., concurs in the result, believing that circumstances surrounding the two incidents are not sufficiently similar to permit admission of the prior crime.

LARSEN, J., files a dissenting opinion which KAUFF-MAN, J., joins.

LARSEN, Justice, dissenting.

I dissent. Six day after appellee's release from prison where he was serving a three year term for forcible sodomy, he is again accused of forcibly raping and sodomizing another young girl. Both victims were approximately 20 years of age; both victims were in or entering their automobiles at the time they were approached by the perpetrator; both victims were forced with deadly weapons to accompany the assailant to a secluded country area; and both victims were ordered to assume crouching positions (one kneeling on all fours and one leaning over the front seat of an automobile) which exposed their genetalia from the rear for the assailant. In my opinion, the circumstances surrounding these crimes are sufficiently similar, and the time frame, considered in light of appellee's incarceration, sufficiently small, that appellee's conviction of the first offense was admissible at his trial for the second.

Consequently, I would reverse the order of the Superior Court and affirm the judgments of sentence.

KAUFFMAN, J., joins in this dissenting opinion.