J. A25045/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| A.G. | : | |
| | : | |
| Appellee | : | No. 476 EDA 2015 |

Appeal from the Order February 17, 2015
In the Court of Common Pleas of Northampton County
Criminal Division No(s).: CP-48-CR-0002181-2014

BEFORE: DONOHUE, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED DECEMBER 11, 2015**

The Commonwealth appeals from the order of the Northampton County Court of Common Pleas precluding, on retrial, evidence of Appellee A.G.'s prior bad acts.[1] The Commonwealth claims the trial court misapplied Pa.R.E. 404(b) by (1) discounting the similarities between the prior and present allegations, (2) focusing on the passage of thirty years between the prior and present allegations, and (3) finding undue prejudice outweighed the probative value of the prior allegations. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth has taken this interlocutory appeal as of right based on its certification that the trial court's ruling will substantially handicap the prosecution. *See* Pa.R.A.P. 311(d). We have amended the caption of this appeal given the nature of the charges.

The trial court summarized the case against Appellee as follows:

[Appellee] herein is charged with the crimes of criminal attempt to commit aggravated indecent assault,[2] indecent assault of a person less than 13 years of age,[3] and corruption of minors,[4] arising out of allegations that he sexually molested his granddaughter between 2001 and 2007, when she was between the ages of four and 10. The complainant in this case, M.G. [("Complainant")], alleges: during those years, on innumerable occasions while she was visiting the home of [Appellee], when she would be alone with him for brief periods of time, [Appellee] would take her into his bedroom, have her lie down on his bed, and he would use his fingers to touch her vagina underneath her clothing.

Trial Ct. Op., 3/16/15, at 2.

The charges against Appellee were filed on June 19, 2014. On November 20, 2014, the Commonwealth filed a notice and motion *in limine* seeking admission of evidence that Appellee, approximately thirty years earlier,[5] abused his daughter, the Complainant's aunt ("Aunt"), from "as far back as she could remember," until she was eleven. Commonwealth's Mot. *in Limine* to Introduce Prior Bad Acts, 11/20/14, at 2. On December 9,

---

[2] 18 Pa.C.S. §§ 901, 3125.

[3] 18 Pa.C.S. § 3126(a)(7). Appellee was initially charged under subsections (a)(1), (a)(7), and (a)(8) of the indecent assault statute, but the charges under (a)(1) and (a)(8) were withdrawn with the consent of the trial court. **See** Order, 1/20/15.

[4] 18 Pa.C.S. § 6301(a)(1).

[5] Aunt was eleven years old between 1970 and 1971, when the prior abuse allegedly ended. The instant criminal complaint alleged the abuse of Complainant began in 2001.

2014, the trial court granted the Commonwealth's motion, concluding the proffer contained sufficiently similar allegations to establish a common scheme, plan, or design. Order, 12/9/14, at 4-5; Trial Ct. Op. at 2. The court also found the proffer was relevant to show the history of the case, because Complainant allegedly reported the abuse to her Aunt, after her Aunt revealed her own history of abuse to Complainant. Order, 12/9/14, at 6; Trial Ct. Op. at 3; **see also** N.T. Mot. *in Limine*/Pre-Trial Conference, 12/5/14, at 6.

A jury trial commenced on February 2, 2015, the relevant parts of which we summarize for the purposes of this appeal.[6] The Commonwealth, in its opening statement, asserted Appellee assaulted Complainant at his home, when Complainant was between four and ten years old. N.T. Trial, 2/2/15, at 21-22. The Commonwealth suggested Complainant did not initially disclose the abuse because Appellee threatened to kill her family and she was afraid the disclosure would upset her father. *Id.* at 23. According to the Commonwealth, Complainant initially reported being abused to her mother, but gave a false account of the assault. *Id.* at 24. She later reported being abused to Aunt. *Id.*

Appellee, in his opening statement, asserted all of the Commonwealth's witnesses had motives to fabricate the allegations. *Id.* at 27. Complainant's parents were divorced and suggested Complainant had

---

[6] Complainant was seventeen years old at the time of the first trial.

difficulties living with her mother during and after the divorce. ***Id.*** Aunt wanted Appellee's rental properties and became upset when he transferred the properties to Complainant's father in 2001. ***Id.*** 27-28. Complainant's father owed Appellee money for the rental properties and a loan for his divorce totaling $1,100 per month. ***Id.*** at 32. Complainant, he asserted, was not credible.

On the first day of trial, Complainant testified as follows. Her father took her to Appellee's home every two weeks to cut the grass. ***Id.*** at 39-40. While her father went to the backyard to do the yardwork, Appellee would take her back to his bedroom and put his hand on her vagina—sometimes over, sometimes under her clothes. ***Id.*** at 43, 45. She indicated Appellee did not touch any other part of her body or force her to touch his body. ***Id.*** at 45. She did not know if he put his fingers inside her vagina. ***Id.*** at 46. Sometimes, she heard the zipper of Appellee's pants, but could not see what he was doing with his other hand. ***Id.*** at 46. These assaults would stop when Appellee could no longer hear the mower[7] or when he was "done." ***Id.*** at 47. These assaults occurred regularly, but would not happen if Appellee's girlfriend was there. ***Id.*** at 49. Complainant stopped going to Appellee's house when she was ten. ***Id.*** at 48-49. She did not report the assaults to her father because Appellee threatened to kill her family. ***Id.*** at 47.

---

[7] Father testified it took approximately twenty minutes to mow the backyard.

Complainant first disclosed the abuse to her mother when she was twelve, but stated the abuse occurred in the bathroom, which she conceded was untrue.[8] *Id.* at 49-50. Later, when she was thirteen or fourteen years old, she sent a text message to Aunt reporting Appellee abused her.[9] *Id.* at 51. She testified she knew Aunt was abused by Appellee because she overheard her parents discussing it. *Id.* at 54. Complainant then reported the abuse to a schoolteacher and a guidance counselor, who, in turn,

---

[8] Complainant's mother testified that Complainant initially disclosed being abused, but did not tell anyone because she was scared "of them taking her from me if I told somebody" and because she was going through a bitter divorce from Complainant's father. N.T. Trial, 2/2/15, at 107.

[9] A copy of Complainant's text message to Aunt was marked as Commonwealth's Exhibit 1 and read by Complainant at trial:

> After everything that had happened to me at the [church] revival tonight, I figured I'd better tell you [Aunt] . . . When the man was saying how I need to let people in and stop building walls and let go of all my secrets and I didn't need to be so strong all the time, I think I should tell you something that has been heavy on my heart for a long time. I'm sorry I've never told you, I haven't told you sooner, but I think I may just be coming to terms with it, too, so I would really like if this stayed between us because as of right now, the only people that know are my mom, Trisha, and soon to be you.
>
> Okay. So when I was little, I was molested by [Appellee]. I wanted to tell you in person but I never got the courage. He told me if I were to ever tell anyone, that he would kill my family and I believed him for years, but I'm not afraid of him anymore. I'm not going to let it bother me anymore, but I thought you should know, considering it happened to you too. . . . .

*Id.* at 53-54.

contacted Children and Youth Services. *Id.* at 55; N.T. Trial, 2/3/15, at 26. She did not remember speaking with Aunt after sending her the text message.[10] N.T. Trial, 2/2/15, at 54.

Aunt testified on the second day of trial. She stated she warned Complainant's father not to take Complainant to Appellee's house because he was a "molester." *Id.* at 90. She acknowledged receiving Complainant's text message and testified they subsequently talked about the abuse. *Id.* at 89. Aunt told Complainant to seek counseling. *Id.* She testified Complainant did not disclose the details of the abuse, but when she asked whether Appellee penetrated her, the Complainant replied, "No." *Id.*

The Commonwealth then asked Aunt to describe Appellee's abuse. She testified the abuse occurred from when she was "five, six, maybe four" years old and stopped when she was ten or eleven years old and began sleeping with a knife under her pillow. *Id.* at 94. She would be in her bed sleeping, and Appellee would be out drinking. *Id.* He would come into her room, get in her bed, and call her by her mother's name. *Id.* at 95. He fondled her chest and her vagina. *Id.* He would touch her, sometimes over her clothes, and sometimes under her clothes. *Id.* at 96. The Commonwealth asked, "Did he ever stick his finger in your vagina?" *Id.* Aunt responded, "Occasionally." *Id.*

---

[10] The trial court issued a cautionary instruction on the use of prior bad acts evidence immediately after the Commonwealth concluded its direct examination of Complainant. N.T., Trial, 2/2/15, at 57-58.

Appellee's counsel objected and requested a mistrial. *Id.* at 97, 99. The court granted mistrial, reasoning:

> As the case progressed since yesterday, it started out that there was some variation of the facts and that was that [Complainant] did not testify that [Aunt] had confided in her about what happened to her, but rather that [Complainant] had overheard her mother and her father having some discussion about what had happened to [Aunt] and although that wasn't factually identical or similar to what had been proffered, I did not feel that it was a problem and I continued to allow that evidence to come in.
>
> [W]hen [Aunt] began to testify and she testified that [Appellee] also touched her breasts, I thought that that was slightly dissimilar, but not sufficiently so as to change my ruling. When [Aunt] testified that [Appellee] had, in fact, penetrated her vagina, that was not only sufficiently dissimilar, but it changed the entire weight of the probative versus prejudicial value of the testimony and its probative value was far outweighed by its potential for unfair prejudice.

*Id.* at 100-01. The court determined the Commonwealth would be "entitled to ty this case again," but that the Commonwealth's prior bad acts motion would have to be reevaluated before retrial. *Id.* at 102.

After the declaration of mistrial, the Commonwealth filed a new motion *in limine* to introduce prior bad acts on February 11, 2015. The motion was substantially similar to its initial motion but incorporated the allegations of vaginal penetration testified to by Aunt at the first trial. **See** Commonwealth's Mot. *in Limine* to Introduce Prior Bad Acts, 2/11/15, at 2. Additionally, the Commonwealth asserted Appellee "threaten[ed] to kill [Complainant's] immediate family, if [Complainant] told about the abuse,"

and also "threaten[ed] to kill [Aunt's] mother, if [Aunt] told about the abuse."[11] *Id.*

The trial court held a conference on the motion on February 13, 2015.[12] The court observed Complainant and Aunt's trial testimony "were more factually distinct" than presented in the Commonwealth's initial proffer. *Id.* The court remarked it was "no longer convinced that they were sufficiently factually similar," but the trial evidence "tip[ped] the balance[,] and the prejudicial impact outweighs the probative value." *Id.* at 4-5.

On February 17, 2015, the trial court entered a written order denying the Commonwealth's motion *in limine*. The following day, the Commonwealth filed its notice of appeal, which contained a Pa.R.A.P. 311(d) certification. The Commonwealth subsequently complied with the court's order to submit a Pa.R.A.P. 1925(b) statement.[13]

---

[11] Although Aunt did not have an opportunity to testify regarding Appellee's threats at trial, it appears Aunt revealed the existence of the threats "last Friday" before trial. N.T. Trial, 2/3/15, at 92.

[12] The transcript of the February 13, 2015 conference was not included in the certified record. However, the Commonwealth included a complete copy of the transcript in its reproduced record, and Appellee did not object to the copy's accuracy. Thus, we rely upon the copy in the reproduced brief. *See Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012).

[13] The Commonwealth's Rule 1925(b) statement takes the form of a six page brief that sets forth a factual background and citations to law related to its "issue," namely, "[t]he trial court erred when it entered an order denying the Commonwealth's Motion *in Limine* which sought to present Prior Bad Acts of [Appellee], pursuant to Pa.R.E. 404(b)." Commonwealth's Concise Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925,

The Commonwealth's sole contention is the trial court erred in precluding the prior bad acts evidence in anticipation of a second trial. ***See*** Commonwealth's Brief at 4. It first argues there are "unique similarities" between Appellee's abuse of Aunt and Complainant, including (1) the familial relations among the parties, (2) the gender of the alleged victims, (3) the location of the assaults–*i.e.*, a bedroom, (4) the victims' ages at the time of the assaults, (5) the manner of the assaults, and (6) Appellee's threats to harm the victims' families if they reported the abuse. ***Id.*** at 12-13 (citing, *inter alia*, ***Commonwealth v. Newman***, 598 A.2d 275 (Pa. 1991), ***Commonwealth v. Aikens***, 990 A.2d 1181 (Pa. Super. 2010), ***Commonwealth v. O'Brien***, 836 A.2d 966 (Pa. Super. 2003), and ***Commonwealth v. Smith***, 635 A.2d 1086 (Pa. Super. 1993)). It claims the "[r]emoteness in time of the two crimes from each other does not bar the admission of the prior bad acts . . . ." ***Id.*** at 14 (citing ***Commonwealth v. Luktisch***, 680 A.2d 877 (Pa. Super. 1996), and ***Commonwealth v. Shively***, 424 A.2d 1257 (Pa. 1981)). Lastly, it asserts the proffered prior

---

2/27/15, at 3 (unpaginated). We further note the Commonwealth framed its legal discussion in terms of the substantial similarity between the incidents, but did not address the court's discretion in balancing the probative versus prejudicial effects. ***See id.*** at 6; ***cf.*** Commonwealth's Brief at 15 (arguing Aunt's "testimony is not unduly prejudicial"). However, the Commonwealth's issues were readily discernible under the circumstances, and all of its present arguments were fairly subsumed within the claimed error. Therefore, we decline to find waiver under Pa.R.A.P. 1925(b)(4)(vii).

bad acts evidence is "more probative than prejudicial." ***Id.*** at 16. No relief

is due.

The Pennsylvania Supreme Court has summarized the principles

governing our review.

> Appellate courts typically examine a trial court's decision concerning the admissibility of evidence for abuse of discretion. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility.
>
> A long-accepted exception to this general rule of admissibility, which is reflected in Rule 404(b)(1)[14] of the Pennsylvania Rules of Evidence, states that "[e]vidence of

---

[14] The current version of Pennsylvania Rule of Evidence 404(b), which applies in this case, states, in relevant part:

> *(1) Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> *(2) Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1), (2) (eff. Mar. 18, 2013).

other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Character evidence (whether good or bad) is, of course, relevant in criminal prosecutions; that is why an accused has the right to introduce evidence of good character for relevant character traits. Evidence of separate or unrelated "crimes, wrongs, or acts," however, has long been deemed inadmissible as character evidence against a criminal defendant in this Commonwealth as a matter not of relevance, but of policy, *i.e.*, because of a fear that such evidence is so powerful that the jury might misuse the evidence and convict based solely upon criminal propensity. Because the fear against which this exception to the general rule of relevance/admissibility is aimed concerns use of prior crimes to show bad character/propensity, a series of "exceptions to the exception" (to the rule of relevance) have been recognized. Thus, as Rule 404(b)(2) reflects, evidence of "other crimes, wrongs, or acts" may be admitted when relevant for a purpose other than criminal character/propensity, including: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. This list is not exhaustive. For instance, this Court has recognized a *res gestae* exception to Rule 404(b) which allows admission of other crimes evidence when relevant to furnish the context or complete story of the events surrounding a crime.

**Commonwealth v. Dillon**, 925 A.2d 131, 136-37 (Pa. 2007) (citations and

emphasis omitted). Further,

Finding that the evidence is relevant to the Commonwealth's case-in-chief does not end the inquiry. In instances where evidence of other crimes, wrongs, or acts is offered for a purpose other than to show conformity of action, such evidence may still be excluded if the probative value of the evidence is outweighed by its potential for prejudice. The probative value of the evidence might be outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence. The comment to Pa.R.E. 403 instructs that: "'Unfair prejudice' means a

> tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Additionally, when weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence.
>
> Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged."

*Id.* at 141 (citations omitted).

In *Aikens*, this Court reiterated that "remoteness is merely one factor to be considered in determining admissibility" of a proffer of prior bad acts evidence. *Aikens*, 990 A.2d at 1186. However, "'while remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question.'" *Id.* at 1185 (quoting *Luktisch*, 680 A.2d at 879).

The *Aikens* Court concluded that evidence that the defendant sexually assaulted one of his daughters seventeen years earlier was "markedly similar" to the trial evidence that he assaulted another daughter. *Id.* Specifically, this Court noted both incidents involved the defendant's biological daughters when they were of a similar age—fifteen years old in the prior instance and fourteen years old in the case at trial. *Id.* at 1185-86. Both assaults began when, in his daughters' presence, the defendant

watched pornography at his apartment. *Id.* at 1186. Both assaults occurred in a bed at night. *Id.* In the prior instance, the defendant raped his daughter. *Id.* at 1183. In the case at trial, he exposed his penis, attempted to disrobe the complainant, and grinded himself against her buttocks, before the complainant fled to another room. *Id.* As to the greater offense of rape alleged in the prior incident, the *Aikens* Court noted, "the victim herein was able to stop the abuse from escalating." *Id.* at 1186. Thus, we held that the evidence of the defendant's prior bad acts constituted evidence of a common plan and the probative value of the evidence outweighed its prejudicial impact. *Id.*

Instantly, we have reviewed the Commonwealth's arguments and the record as a whole. The Commonwealth emphasizes the similarities between the alleged abuse of Aunt and Complainant. Our review confirms that the trial court considered those similarities and determined the proffer was relevant. However, the court found critical several differences between the prior and instant allegations of abuse, namely, the time of day at which the abuse occurred, the manner in which Appellee was alleged to have initiated the abuse, and the extent of the alleged abuse. Trial Ct. Op. at 7-8.

Contrary to the Commonwealth's arguments, the trial court's consideration of the differences between that the prior and present allegations of abuse did not relate to trivial details, and the court did not unduly rely upon the passage of thirty years between the prior and present

allegations. Rather, the court appropriately considered factors distinguishing the prior and present allegations to conclude the Commonwealth's proffer of a common plan, scheme, or design was less probative than the evidence admitted in *Aikens*. Trial Ct. Op. at 5-6. Moreover, the court was in a unique position to weigh the relevance and undue prejudice of the Commonwealth's proffer, having presided at the first trial at which the pertinent testimony was actually received. Thus, we conclude the Commonwealth's arguments fail to establish an error of law or abuse of discretion in the trial court's application of Rule 404(b). *See Dillon*, 925 A.2d at 136.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2015