J-A06004-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| LORI ANN TRESSLER, | |
| Appellee | No. 970 WDA 2017 |

Appeal from the Order Entered June 22, 2017
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000011-2016

BEFORE:  BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 15, 2018**

The Commonwealth files this interlocutory appeal pursuant to Pa.R.A.P. 311(d) from the trial court's order granting Lori Ann Tressler's ("Appellee") motion *in limine*.  The Commonwealth charged Appellee with homicide for the death of Robert Lee Engle ("Victim"), who suffered a single stab wound to the heart.  Appellee sought to exclude evidence of her numerous prior stabbings of Victim under the general ban on the admission of prior bad acts evidence. The court granted that motion, and the Commonwealth has certified that the trial court's order has substantially handicapped their case.  After careful review, we affirm in part and reverse in part.

---

[*] Retired Senior Judge assigned to the Superior Court.

The following preliminary facts were taken from the multiple affidavits of probable cause filed in this case.[1]  Appellee and Victim were romantically involved and living together in Smithfield, PA, a small borough in Fayette County.  The pair were out drinking with two friends on the evening of August 21, 2015, which continued into the early morning of August 22, 2015.  When they returned home, Victim became involved in a verbal altercation with Appellee and her son, Jeffrey Tressler ("Jeffrey"), outside of their mutual residence.  At some point, Victim may have pushed Appellee to the ground.  Subsequently, the Commonwealth alleges that Appellee retrieved a kitchen knife from inside the home, returned outside, and stabbed Victim once in the chest.  Victim sought help by walking to a neighbor's home and knocking on their door but, shortly thereafter, he collapsed and died from his wound.

On January 20, 2016, the Commonwealth charged Appellee by criminal information with homicide, 18 Pa.C.S. § 2501.  On February 22, 2017, following the Commonwealth's giving notice of its intent to introduce prior bad acts evidence, Appellee filed a motion *in limine* seeking to exclude that evidence.  **See** Appellee's Motion in Limine, 2/22/17, at 1-3 (unnumbered pages).  Specifically, Appellee sought to exclude evidence that the Commonwealth had previously charged her with aggravated assault, simple assault, and harassment, against Victim on a prior occasion, charges which were ultimately dismissed or otherwise withdrawn.  She also sought to exclude

---

[1] **See** Affidavit of Probable Cause, 8/22/15, at 1 (Trooper Broadwater); **and see** Affidavit of Probable Cause, 8/22/15, at 1-2 (Trooper Dowlin).

evidence that she had been previously listed as the accused or the victim in incidents of domestic violence in prior police reports, incidents which did not result in formal charges, and testimonial evidence from "numerous" witnesses regarding these prior charged and uncharged incidents. *Id.* at 1-2 ¶ 4. Even more broadly, Appellee sought to exclude

> any and all evidence referencing any prior incident between [Appellee] and the alleged victim, including but not limited to, the 2009 criminal charges and related incident; any other criminal matter; any protection from abuse proceedings or other domestic abuse proceedings involving [Appellee]; any prior bad acts involving [Appellee] and any other individual; and any statements referencing any prior incidents that will prejudice [Appellee]'s case….

*Id.* at 2 ¶ 7. Appellee argued that such evidence is "clearly prejudicial" to her case, and inadmissible under Pa.R.E. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). *Id.* at ¶ 6.

On June 22, 2017, the trial court entered an order granting Appellee's motion *in limine* with regard to this prior bad acts evidence, and contemporaneously provided an opinion in support thereof.[2] Trial Court Opinion (TCO), 6/22/17, at 1. Specifically, the trial court precluded the Commonwealth

> from introducing evidence of [Appellant]'s prior bad acts related to the 2009 incident for which [Appellant] was charged and

_____

[2] The trial court also denied the motion *in limine* with regard to other matters not pertinent to this appeal.

- 3 -

charges were dismissed.  In addition, the Commonwealth, during its case in chief, is precluded from introducing evidence of prior attempted stabbings or occasions when [Appellant] retrieved a knife while arguing with … [V]ictim in this case.

Order, 6/23/17, at 1.  Notably, the trial court reserved judgment "on the admissibility of prior bad acts evidence once the defense rests, should the Commonwealth present any rebuttal witnesses." *Id.*  Thus, the scope of the trial court's order was limited to the Commonwealth's case in chief.

On July 6, 2017, the Commonwealth filed a notice of interlocutory appeal pursuant to Pa.R.A.P. 311(d) ("In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.").  The trial court did not order the Commonwealth to file a Pa.R.A.P. 1925(b) statement.  Instead, the trial court issued a statement *in lieu* of a Pa.R.A.P. 1925(a) opinion, incorporating its June 22, 2017 opinion.  Statement in Lieu of Opinion, 8/4/17, at 1-2.

The Commonwealth now presents the following single question for our review:

Whether the [t]rial [c]ourt erred in precluding the Commonwealth and thereby substantially handicapping the prosecution, from introducing evidence of [Appellee]'s prior bad acts, including testimony regarding instances when she had previously stabbed the decedent and/or [Appellee]'s previous propensity to retrieve a knife during arguments with the decedent?

Commonwealth's Brief at 4.

The standard of review for evidentiary rulings of the lower court is well settled. Admissibility of evidence "is a matter addressed to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused its discretion." *Commonwealth v. Odum*, 584 A.2d 953, 954 (Pa. Super. 1990) (quoting *Commonwealth v. Claypool*, 495 A.2d 176, 178 (Pa. 1985)).

The Pennsylvania Rules of Evidence provide that: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Nevertheless, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Our Supreme Court has determined that Rule 404(b)(2) does not provide an exclusive list of exceptions. *See Commonwealth v. Lark*, 543 A.2d 491, 497 (Pa. 1988) (stating that the "list of 'special circumstances' is not exclusive"). Nevertheless, "[i]n a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for *unfair* prejudice." *Id.* (emphasis added).

The Commonwealth asserts that the precluded evidence was admissible in their case in chief under numerous Rule 404(b)(2) exceptions, and that the evidence's probative value outweighed its potential for unfair prejudice. In its opinion, the trial court rejected the application of any Rule 404(b)(2) exception and, alternatively, ruled that even if admissible under one of those

exceptions, the potential prejudice of such evidence still outweighed any probative value.

Thus, we must engage in a two-step analysis of the trial court's ruling to determine if the court abused its discretion by excluding the prior bad acts evidence at issue. First, we must decide if one or more of the Rule 404(b)(2) exceptions apply to the evidence in question. If not, our inquiry ends, and we must find that the trial court did not abuse its discretion. If we do find that one or more of the Rule 404(b)(2) exceptions apply, we must consider whether the trial court abused its discretion by ruling that the probative value of such evidence was outweighed by its potential for unfair prejudice.

The prior bad acts evidence at issue, generally speaking, consists of testimony by various witnesses concerning prior incidents where Appellee used a knife to stab Victim. With regard to the prior bad act that resulted in Appellee's arrest for assault charges, the Commonwealth would call two police officers to testify about the facts of that specific case. With regard to various acts that did not result in an arrest or criminal charges, the Commonwealth would call Appellee's son, who would testify that Appellee "personally stab[bed] [V]ictim at least 20 times, and that he was personally stabbed by … Appellee." Commonwealth's Brief at 7. Additionally, the Commonwealth would call Victim's mother to testify that she often observed Victim with "fresh stab wounds on his body, which … Appellee would brag that she had caused." *Id.* Where it is appropriate to differentiate between these categories, we will refer to "prior arrest evidence," "testimony of Appellee's son," and "testimony

of Victim's mother," respectively. We will refer to this evidence, collectively, as the prior bad acts evidence ("PBA evidence").

**Motive**

The Commonwealth claims that the PBA evidence was relevant to demonstrate Appellee's motive to stab Victim. To be admissible under Rule 404(b)(2), there "must be a specific logical connection between the other act and the crime at issue which establishes that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Commonwealth v. Ross*, 57 A.3d 85, 100 (Pa. Super. 2012) (quotation marks omitted). The Commonwealth alleges that the PBA evidence "supports a finding of motive[,]" because of "similarities between the prior bad acts and the crime at issue," which the Commonwealth sets forth as follows:

> (a) Appellee utilized the same type of weapon, specifically, a kitchen steak knife; (b) Appellee primarily attacked the same victim, namely Robert Engle; (c) Appellee was engaged in an argument with [V]ictim at the time of the stabbings; and, (d) [] Appellee was imbibing in alcohol at the time of the incidents, or immediately prior thereto.

Commonwealth's Brief at 10.

The trial court rejected this theory, indicating that it could not find any logical connection between the PBA evidence and a potential motive for Appellee's stabbing of Victim. TCO at 3. Indeed, the Commonwealth does not even postulate a motive that is ostensibly suggested by the PBA evidence at issue in this case.

- 7 -

In **Commonwealth v. Martin**, 387 A.2d 835 (Pa. 1978), thirteen days prior to his murder, the victim had struck the appellant with a chair when the appellant was attempting to rob others. Our Supreme Court held that it was reasonable to conclude that a revenge motive for the subsequent murder could be demonstrated by evidence of the prior bad act. **Martin**, 387 A.2d at 838. Notably, there was very little that was *similar* between the prior bad act and the subsequent murder in that case, apart from the involvement of the same parties. By contrast, in **Ross**, it was alleged that the appellant had sexually assaulted, strangled, and ultimately drowned the victim. Numerous prior bad acts by Ross bore similarities to the murder, including his inebriation during the offenses, his choking of the victims, his sexual assaulting of the victims with a foreign object, and common attributes shared by each of the victims. Nevertheless, the **Ross** Court concluded that evidence of such prior bad acts evidence did not tend to demonstrate a motive in the new case.

The instant case is more analogous to **Ross** than it is to **Martin**. While significant similarities exist between the PBA evidence and Victim's murder, there is no obvious *logical connection* between the PBA evidence and the current offense in terms of Appellee's motive. Accordingly, we conclude that that the trial court did not abuse its discretion when it precluded the Commonwealth from introducing the PBA evidence under a motive theory.

### Intent/Lack of Accident

Next, the Commonwealth suggests that the PBA evidence was relevant to prove Appellee's intent to kill Victim or, relatedly, that Victim's death did

not result from an accident. The Commonwealth states that "[g]iven the circumstances surrounding [Victim]'s murder, [resulting from] a single stab wound to the heart, there can be a question as to [Appellee's] intent…." Commonwealth's Brief at 10. The Commonwealth further argues:

> Appellee may raise the defense that she did not intend for the victim to die as a result of the stabbing. During her oral recorded statement, Appellee told police that she threw a drawer full of kitchen utensils at [V]ictim. The Commonwealth contends that this prior bad act testimony will demonstrate that Appellee's intent was to inflict a stab wound on the victim on the night in question[]. There was no mistake or accident that a knife penetrated the victim's heart. This prior bad act testimony supports this essential and required element. Accordingly, prior bad acts testimony should be permitted with regard to intent.

*Id.* at 10-11.

> The trial court rejected this argument, reasoning:

> The fact that [Appellee] may have retrieved a kitchen or steak knife on many prior occasions when there were domestic disputes with [Victim] does not **necessarily** tend to prove that her intent on this particular occasion was in fact **to kill** him. Evidence of these prior acts would simply show that [Appellee] responded to domestic disputes by grabbing a kitchen or steak knife.

TCO at 3 (emphasis added).

The intent, absence of mistake, or lack of accident exceptions set forth in Rule 404(b)(2) are often one and the same, especially when there is reason to believe that the nature of a particular defense will be that the criminal act in question was done unintentionally. In seeking to undermine or disprove such a claim, there are few hairs to split between proving the actor's intent,

- 9 -

and disproving whether an act was accidental. These exceptions, therefore, often go hand-in-hand, as they appear to do in this case.

Here, Appellee told police that she threw a drawer full of kitchen utensils at Victim, clearly suggesting that the resulting single, fatal stab wound to Victim's heart was accidental. The PBA evidence tends to suggest otherwise, given the wealth of evidence potentially demonstrating Appellee's frequent and intentional prior stabbings of Victim. The PBA evidence tends to suggest that the stabbing at issue was not an accident and, simultaneously, that the stabbing was intentional rather than unintentional.

Nowhere in our review of the relevant case law, nor in Rule 404(b)(2) itself, could we find the applicable standard expressed in the absolutist language used by the trial court, such that prior bad acts evidence must *necessarily* prove or *necessarily* tend to prove one of the enumerated exceptions to be admissible. To be sure, it is *possible* that a defendant who acted intentionally on a thousand prior occasions could act unintentionally or by mistake on the 1001st occasion of committing a similar act. Indeed, when considering the identity exception, it is *possible* that a serial killer could deviate from his usual pattern, or that another person could copy his distinctive pattern. Nevertheless, what the prior acts *tend* to prove is not synonymous with what they prove out of *necessity*. Evidence is relevant if it "tends to establish a material fact, ***makes a fact at issue more or less probable***, or ***supports a reasonable inference*** supporting a material

fact…." ***Commonwealth v. Boczkowski***, 846 A.2d 75, 88 (Pa. 2004) (emphasis added).

Thus, the standard applied by the trial court in dismissing the Commonwealth's argument based on the intent exception was too strict, and appears to impose a weight standard on the PBA evidence, rather than merely determining its admissibility. Here, the PBA evidence tends to make it less probable that Victim died as the result of an accident or mistake. It similarly tends to make it more probable that Appellee acted intentionally when she stabbed Victim. Moreover, the trial court's limited focus on the specific intent to kill was misplaced. Appellee was not charged solely with first-degree murder; she was charged with a more general provision, criminal homicide, 18 Pa.C.S. § 2501(a). "A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S. § 2501(a).

As noted previously, we are cognizant that the trial court limited its ruling on the PBA evidence to the Commonwealth's case-in-chief, which suggests that the trial court is willing to reconsider its ruling depending on the nature of the defense presented at trial. However, in ***Boczkowski***, our Supreme Court expressly rejected the notion that "evidence of an absence of accident must or should be presented only as responsive evidence to a specifically-forwarded defense of accident[,]" at least with respect to murder prosecutions. ***Boczkowski***, 846 A.2d at 88. This is because, "[i]n a murder prosecution, the Commonwealth bears the affirmative burden of convincing

the jury beyond a reasonable doubt that the death was **only** by homicide[.]"

*Id.* (emphasis added).  Likewise, the Commonwealth always bears the burden

of demonstrating the *mens rea* elements of an offense.

In **Boczkowski**,

> evidence available to the Commonwealth … was suggestive that [the victim]'s death could have been accidental, even if [the] appellant did not affirmatively argue that inference.  Illustrative are the facts that [the] appellant told paramedics at the scene that on the night she died [that the victim] had consumed fourteen beers; that he and [the victim] had been celebrating an upcoming event; that he had left her in the hot tub while he went to take a shower; and that, upon returning, he found her unconscious and face up in the hot tub.

*Id.* at 89.

Similarly, here, Appellee told police that Victim died after she threw a

drawer full of kitchen utensils at him.  This statement constitutes evidence of

an accidental death, or at least, of an unintentional killing, evidence which the

Commonwealth must *effectively* rebut in order to prove any degree of

homicide beyond a reasonable doubt.  Thus, based on our reading of

**Boczkowski**, and our analysis of the standard applied by the trial court, we

are compelled to conclude that the court erred by deeming the PBA evidence

inadmissible under either the intent or absence of mistake provisions of Rule

404(b)(2), in the Commonwealth's case-in-chief.

**Identity/Common Scheme, Plan or Design**

Next, the Commonwealth argues that the PBA evidence was admissible

under the "identity" or "common scheme, plan or design" exceptions to the

prior bad acts ban.   The definitions of these exceptions are similar, but

diverge as to the purpose for which they are used. The identity exception is set forth in **Commonwealth v. Shively**, 424 A.2d 1257 (Pa. 1981), as follows:

> "[]Evidence of other crimes is admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or **to establish the identity of the person** charged with the commission of the crime on trial, in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." **Commonwealth v. Wable**, 382 Pa. 80, 82, 114 A.2d 334, 336-37 (1955)....

**Shively**, 424 A.2d at 1259 (emphasis added). Thus, the purpose of the identity exception is, quite obviously, to prove that the identity of the accused and the perpetrator of crime are one in the same.

A prior-bad-acts-ban exception also exists for "a common scheme, plan[,] or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the other[.]" **O'Brien**, 836 A.2d at 969. While similarly defined, the common scheme, plan, or design exceptions is used for purposes *other* than proving identity. In **O'Brien**, for instance, it was used to bolster or otherwise corroborate the victim's version of events. **Id.** at 970.

The Commonwealth contends that the PBA evidence fits within these exceptions because, in each incident described by the PBA evidence, Appellee, while intoxicated, used a steak knife to stab the same person, Victim, and did so during or following a domestic dispute with Victim. The trial court rejected the identity claim, indicating that the evidence simply did not meet the strict

*Shively* standard. TCO at 3-4. The court's specific analysis of the common scheme, plan, or design exception, however, is absent from its opinion. *See* TCO at 3-4.

In our view, Appellee's repeated use of the same weapon, against the same victim, and in virtually the same circumstances (arguing with Victim at home while intoxicated), demonstrates a pattern of conduct that is "unusual and distinctive" to the extent that it is "like a signature." *Shively*, 424 A.2d 1259. We are especially convinced in this regard due to the frequency of the stabbings against the same target. Nevertheless, it does not appear that identity is yet at issue in this case, nor does it appear likely to be an issue, especially given Appellee's statement to police.[3] Accordingly, we agree with the trial court that the identity exception is ill-fitted to the facts of this case.

However, the common scheme, plan, or design exception is not constrained by the purpose of proving identity, and we find the pattern demonstrated by the PBA evidence to be at least as equally distinctive as the pattern this Court observed in *O'Brien*. In that case, also an interlocutory appeal from a trial court's refusal to admit prior bad acts evidence under Rule 404(b)(2), the defendant was charged with sexually assaulting a minor. As described by the Commonwealth in *O'Brien*, the new charges were strikingly similar to a prior offense:

_____

[3] At oral argument, Appellee indicated that identity might be an issue as this matter moves forward. If that were indeed the case, then the PBA evidence would be admissible for that purpose as well.

> All of the charges stemmed from [the] defendant's sexually assaulting young boys.  All of the victims shared similar personal characteristics.  Each boy was white, between the ages of eight and eleven years old, and each boy knew [the] defendant because his parents were friends of [the] defendant.  Each crime was committed after [the] defendant was alone with his victim, in [the] defendant's home and often in his bedroom, after [the] defendant had shown pornography to the victim.  Each crime involved deviate sexual intercourse—either oral or anal—and, in each case, [the] defendant instructed the victim not to tell anyone what had occurred.

*O'Brien*, 836 A.2d at 970.

The trial court in *O'Brien* precluded the Commonwealth from admitting the evidence of the prior crime, finding that, although similar, the factual similarities between the crimes did not rise to the level of a "signature." *Id.* at 970-71.  The *O'Brien* Court reversed, reasoning that the trial court had focused exclusively on the defendant's actions, rather than "the factual similarities of the incidents in their entirety." *Id.* at 971.  The appropriate standard, the *O'Brien* Court determined, was to examine "the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, *as well as* the time, place, and types of victims typically chosen by the perpetrator." *Id.* (emphasis added, quoting *Commonwealth v. Smith*, 635 A.2d 1086, 1089 (Pa. Super. 1993)).

Here, we agree with the Commonwealth that the PBA evidence establishes a pattern that is at least as distinctive as that which occurred in *O'Brien*.  Appellee has repeatedly targeted the same victim, with the same type of weapon, in very similar circumstances (while having a domestic dispute, after becoming intoxicated).  By contrast, in *O'Brien*, there was only

a single prior bad act at issue, which had involved an entirely different victim. Accordingly, we conclude the trial court erred when it determined that the common scheme, plan, or design exception did not apply to the PBA evidence.

**Probative Value and Unfair Prejudice**

Having determined that multiple Rule 404(b)(2) exceptions applied to the PBA evidence, we now turn to addressing the trial court's alternative analysis that, even if admissible under a Rule 404(b)(2) exception, the PBA evidence is unduly prejudicial in relation to its probative value. Even if facially admissible under an Rule 404(b)(2) exception, the PBA evidence may only be admitted at trial "if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

> In conducting the probative value/prejudice balancing test, courts must consider factors such as the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and "the degree to which the evidence probably will rouse the jury to overmastering hostility." McCormick, Evidence § 190 at 811 (4th ed.1992). ***See also Commonwealth v. Frank***, 395 Pa. Super. 412, 577 A.2d 609 (1990) (enumerating balancing test factors, including ability for limiting instruction to reduce prejudice).
>
> ***Commonwealth v. Kinard***, 95 A.3d 279, 286 (Pa. Super. 2014) (quoting ***Commonwealth v. Weakley***, 972 A.2d 1182, 1191 (Pa. Super. 2009)). The admission of evidence becomes problematic only when its prejudicial effect creates a danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial. ***Commonwealth v. Sherwood***, 603 Pa. 92, 114–16, 982 A.2d 483, 496–98 (2009) (internal quotation marks and citation omitted).

- 16 -

*Commonwealth v. Diehl*, 140 A.3d 34, 41 (Pa. Super. 2016), *appeal denied*, 160 A.3d 757 (Pa. 2016).

> The trial court's analysis of this matter, in its entirety, is as follows:
>
> > The Court has carefully considered that even if the Commonwealth could show any of the exceptions set forth in Pa.R.E. 404(b)[(2)], the probative value of the evidence does not outweigh the potential for unfair prejudice. It would be difficult, if not impossible, for a jury not to simply conclude that [Appellee] stabbed and killed [Victim] on this occasion since she stabbed or tried to stab him on one or twenty previous occasions. The purpose of Rule 404(b) is to prohibit the admission of prior bad acts to prove "the character of a person in order to show action in conformity therewith." The prior bad acts testimony offered in this case would certainly cause the jury to conclude that if [Appellee] stabbed [Victim] previously, then she must have stabbed him on this occasion.

TCO at 4.

The court's analysis is problematic for two reasons. First, the court does not describe, nor even acknowledge, the probative value of the evidence in question. As discussed above, the PBA evidence is probative of Appellee's intent, the cause of Victim's death (in terms of lack of accident/mistake), and the establishment of a common scheme, plan, or design between the prior bad acts and the current offense to bolster the accounts of the Commonwealth's proposed eyewitnesses. The PBA evidence at issue is especially probative in this matter given Appellee's statement to police. Thus, it appears that the trial court's analysis understates, if not outright ignores, the significant probative value of the PBA evidence in this case.

Second, the trial court's summation of the prejudicial nature of the PBA evidence is fatally nonspecific. The court merely notes the risk of prejudice involved in all cases involving evidence of prior bad acts – the risk of the jury assuming that a defendant would act "in accordance with the character" traits demonstrated by the prior bad acts. Pa.R.E. 404(b)(2). In its analysis, the trial court did not discuss any particular risks presented in the specific circumstances of this case that would make the generic risk presented by the PBA evidence more or less likely.

In our view, the significant probative value of the PBA evidence at issue generally outweighs the risk of *unfair* prejudice to Appellee. "Where evidence of prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose." ***Commonwealth v. Ivy***, 146 A.3d 241, 251 (Pa. Super. 2016). Moreover, "[i]t is presumed the jury follows the court's instructions." ***Commonwealth v. Speight***, 854 A.2d 450, 458 (Pa. 2004). Thus, the risk of unfair prejudice should be mitigated significantly by the trial court's issuing cautionary instructions regarding the PBA evidence. Accordingly, with regard to the proposed testimonies of Appellee's son and Victim's mother, we conclude that the probative value of that evidence is not outweighed by the risk of unfair prejudice, assuming, of course, that proper and adequate cautionary instructions accompany their respective testimony.

However, we reach the opposite conclusion with regard to the prior arrest evidence, for the following reasons. First, Appellee's prior arrest and

the resulting charges did not ultimately result in a conviction. Second, the proposed witnesses for the prior arrest evidence are two police officers who were not represented by the Commonwealth as eyewitnesses to the bad acts in question and, therefore, are likely to be indirect sources for the PBA evidence arising from Appellee's arrest on those charges. Third, the involvement of the criminal justice system in the prior arrest evidence risks the jury's placing undue weight on the veracity of those specific allegations. Finally, the prior arrest evidence would be largely cumulative given the proposed testimonies of Appellee's son and Victim's mother. Thus, the additional probative value of the prior arrest evidence, beyond what would be provided by Appellee's son and Victim's mother, is minimal, whereas the risk of unfair prejudice from the prior arrest evidence is substantially greater.

In sum, we conclude that the trial court abused its discretion by precluding the proposed testimonies of Appellee's son and Victim's mother, as such evidence is admissible under several Rule 404(b)(2) exceptions, and because the probative value of that evidence outweighs the risk of unfair prejudice. However, with regard to the prior arrest evidence, we conclude that while it does satisfy several Rule 404(b)(2) exceptions, the risk of unfair prejudice outweighs its probative value.

Order **affirmed** in part, **reversed** in part. **Remanded** for further proceedings. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/15/2018